**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

PRODUCTS OF PERFORMANCE

        Plaintiff,                    Case Action No:

vs.                                                Hon.

GO NORTH GROUP AB

        Defendants.
_____

MEROUEH & HALLMAN, LLP
Attorneys for Plaintiff
Odey K. Meroueh, P76460
14339 Ford Rd., 2nd Floor
Dearborn, MI  48126
(313) 582-7469
okm@mhatlaw.com

_____

**COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs PRODUCTS OF PERFORMANCE, pursuant to MCL 600.605 and MCL 600.8035, seeking equitable relief, economic and compensatory, exemplary and punitive damages against the Defendants to the extent available, and state:

**PRELIMINARY STATEMENT**

This lawsuit is a straight-forward breach of contract matter, involving unpaid terms of an Asset Purchase Agreement ("APA"). **EXHIBIT A.**

## JURISDICTION AND VENUE

1. This controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) and all or part of the action includes a business or commercial dispute.

2. This Court is the proper venue of this matter pursuant to the Revised Judicature Act of 1961, 1961 PA 236, Section 1621, MCL 600.1621 inasmuch as all the parties conduct business in the County of Kalamazoo, State of Michigan.

3. Additionally, Venue is found in this jurisdiction through the consent of the parties. Within the Asset Purchase Agreement signed by the parties, Section (22) titled "General Provisions" Subjection (k) states the following, "Choice of Laws and Venue. You agree that any and all claims arising out of or related to this Agreement, including its validity, interpretation, breach, violation, or termination, shall be brought in the exclusive forum of the state or federal courts located in Kalamazoo County, Michigan and pursuant to Michigan law. The Parties expressly consent to personal and subject matter jurisdiction in this forum. The prevailing party is entitled to payment of its costs, expenses, and attorney fees by the non-prevailing party for actions, disputes, or litigation arising out of or related to this Agreement. This Agreement is deemed to have been negotiated, executed, and performed exclusively within Kalamazoo County, Michigan." **EXHIBIT A.**

## PARTIES

4. Plaintiff, Products of Performance, LLC (hereinafter referred to as "PoP" or "Plaintiff") was registered as a limited liability corporation in the state of Wyoming in 2015. **EXHIBIT B.**

5. The Articles of Incorporation were filed by Ryan Hofacre on 5/21/2015.

6. PoP is in control of "Fulfilled by Amazon" (herein referred to as FBA) e-commerce store.

7. Within its portfolio, PoP is the owner of the brand, "Caster Master".

8. Caster Master produces rubber furniture foot covers that are sold online through Amazon. Their store upon information and belief at the time of this complaint currently offers 16 different products with over 6,000 reviews from customers. **EXHIBIT C.**

9. During all periods relevant to this Complaint, PoP conducted business in Kalamazoo County.

10. Defendant Go North, a Swedish company is a developer of e-commerce aggregators designed to acquire and scale brands on Amazon and other similar retailers.

## APA CONTRACT

11. The APA contract states as follows:

"In consideration of the Purchase Price, Seller hereby sells, assigns, transfers, conveys and delivers to Buyer, and Buyer hereby purchases from Seller right, title and interest in each of the following (collectively referred to as the "Assets"):

(a) The Amazon FBA account associated with the Business, including all associated accounts, content, data, customer lists, databases, files, and artwork;

(b) The http://www.castermastercups.com domain name and its associated domain name registration.

(c) All accounts, content, data, customer lists, databases, files, and artwork associated with the Business;

(d) All trademark and trade names and related goodwill associated with the Business and all copyright rights pursuant to 17 U.S.C. § 106 associated with the

3

Business;

(e) All licenses for applications or plugins used in connection with the Business;

(f) All prepaid expenses and subscriptions as of the Effective Date of this Agreement associated with the Business; and,

(g) All inventory currently housed at Amazon Fulfillment Centers, in 3PL, en route and currently being manufactured. ("Inventory"). **EXHIBIT A**

12. The APA also included language regarding the purchase price which indicated that there were to be three payments made to Plaintiff: an Upfront Payment, Earn Out Payment and a second Earn Out Payment. **EXHIBIT A.**

13. According to the APA, Upfront Payment: Buyer shall pay to Seller an Upfront payment of $1,002,644 USD ("Upfront Payment"). Buyer shall deposit the Upfront Payment with Broker no later than five (Swedish) business days following the Effective Date, and upon receipt Broker shall provide Seller with notice of said deposit. **EXHIBIT A.**

14. According to the terms of the APA regarding Earn Out Payment 1, Buyer shall pay to Seller $250,661 USD ("Earn Out Payment 1") if Gross Revenue from the Business totals at least $1,566,413 USD during the 12 month period immediately following the Effective Date ("Earn Out Period"). For the avoidance of doubt, no Earn Out Payment 1 shall be paid if Gross Revenue is less than $1,566,413 USD during the Earn Out Period. Earn Out Payment 1 is to be paid by Buyer to Broker within 30 days after the end of the Earn Out Period. **EXHIBIT A.**

15. According to the terms of the APA regarding Earn Out Payment 2, Buyer shall pay to Seller a payment ("Earn Out Payment 2") equal to 50% of all Net Profit over $345,000 USD earned during the Earn Out Period. Earn Out Payment 2 is uncapped. For the avoidance of doubt, no Earn Out Payment 2 shall be paid if Net Profit is less than $345,000 USD during the

Earn Out Period. Earn Out Payment 2 is to be paid by Buyer to Broker within 30 days after the end of the Earn Out Period. **EXHIBIT A.**

    16.    In section (10) of the APA, language relating to the event of Buyer Default was included in Section (10), which consists of three subsections itemized as "a" through "c:"

(a) The following shall be deemed an event of Buyer's Default: 1) Buyer fails to timely complete the required Earn Out Payments; 2) Buyer breaches a term of this Agreement; 3) if prior to completing the required Earn Out Payments Buyer or another person shall file a petition for relief for Buyer under the bankruptcy laws, or shall make an assignment for the benefit of creditors for Buyer, or if a receiver of any property of the Buyer be appointed in any action, suit or proceeding by or against Buyer, or if Buyer shall admit to any creditor or to Buyer that it is insolvent, or if the interest of Buyer in the Assets shall be sold under execution or other legal process.

(b) Upon the occurrence of an event of Default, Seller shall have the right to terminate the Agreement and shall be entitled to full possession of the Assets. Seller may make its election to terminate known to Buyer by delivery of a notice of termination to Buyer and a notice to Broker to transfer any of the Assets to Seller, if Broker is in possession of any Assets. Such termination shall be immediately effective and Seller shall be entitled to forthwith commence an action in summary proceedings to recover possession of the Assets. Buyer agrees to fully comply and cooperate to transfer the Assets to Seller. Upon the occurrence of an event of Default, Buyer is not entitled to any refund of any portion of the Purchase Price. Further, the Parties agree Broker is not liable in any manner whatsoever for its transfer of any Assets to Seller consistent with this Agreement. Broker has no obligation to refund any portion of its Commission upon a Default.

(c) Anything contained in this Agreement to the contrary notwithstanding, on the occurrence of an event of default, the Seller or Broker shall not exercise any right or remedy under any provision of this Agreement or applicable law unless and until: (a) the Seller or Broker has given written notice thereof to the Buyer, and (b) the Buyer has failed to cure the event of default within fifteen (15) days. **EXHIBIT A**

17. The APA was signed on October 30th of 2022 by three of the buyers: Wilhelm Bergman, Director of Mergers and Acquisitions; Johan Hallenby, CEO of Go North; and Scott Henshaw. The document was also signed by Plaintiff, Ryan Hofacre founder of PoP and Caster Master. **EXHIBIT A.**

## BASIS OF CLAIMS

18. On November 3rd of 2022, Go North retained the Assets per the terms of the APA and were given 12 months to pay the Earn Out.

19. In August of 2023, Go North crossed the revenue threshold of $1,500,000.00, which triggers the remainder of the Earn Out to Plaintiff.

20. In September of 2023, Adam, a representative of Empire Flippers (broker of the initial agreement), wrote an email to Go North Group AB informing them about the revenue threshold that had been met and that Plaintiff was awaiting payment to which Go North AB responded without objection, but asking that they be permitted the whole 12 months to perform their end of the Agreement. **EXHIBIT D.**

21. On November 20th of 2023, CEO of Go North Group, Johan Hallenby, reached out to Plaintiff saying that they have a financial hardship and asked if Plaintiff would be willing to sign an amendment to the contract in order for us to get the earn out in four installed payments

6

over a 12-month period, with the first payment of $50,000.00 being sent within three business days of execution of the payment plan. **EXHIBIT E.**

22.     The parties executed the Amendment on December 1, 2023.

23.     Defendants did not make the payment of $50,000.00 to Plaintiff on December 4, 2023.

24.     On December 7th, 2023, Plaintiff gave them written notification (per the contract) that Defendants have breached the contract as amended and have 14 days to make the first payment.

25.     On December 20th, 2023 Go North AB legal counsel informed Plaintiff that they will not be making payment on the due date and were, "negotiating the terms with the primary bond holders and investors."

26.     Between January 10th and 18th, 2024 Plaintiff's legal counsel submitted a financing statement UCC Financing Statement securing Plaintiff's interest in the Asset.

27.     In February 2024 Plaintiff through What's App communication with CEO Johan was told that the agreement with the bond holders and investors was set to go through by February 9th, 2024, indicating that that is when Plaintiff would receive its first payment.

28.     Plaintiff's lawyer sent an official letter giving Defendant until February 16th, 2024 to make the full Earn Out payment. The letter covered Plaintiff's legal course of action if that letter was not adhered to. **EXHIBIT F.**

29.     On February 15th, 2024, Defendant informed Plaintiff that it would not be making its payment on February 16, 2024 as planned.

30. On February 17th, 2024. Defendant Go North issued a press release stating that the company had restructured their debt and was given 10 million USD by the bondholders to aid in their financial situation.

31. To this date Defendant has not issued any Earn-Out payment to Plaintiff, despite several promises to do so and several acknowledgements of the owed debt.

## COUNT I
## BREACH OF CONTRACT

32. That the Plaintiff incorporates herein by reference in its allegations in paragraph 1 though 32, word for word, as if same were entirely replead.

33. That on October 30th, 2022 the Parties interred into an Agreement, **EXHIBIT A**, wherein parties agree to the sale of Caster Master in adherence to the terms of the Agreement.

34. Defendant failed to adhere to the terms of the Agreement, specifically the terms requiring the Earn Out payment.

35. That as a direct and proximate result of the Defendants breach of the Agreement, the Plaintiff has sustained damages.

**WHEREFORE,** the Plaintiff prays for a Judgement against the Defendant in the amount of the Earn Out Fee together with interest, costs, and attorney's fees as well as any other fees that this Honorable Court see's fit to award as well as injunctive relief including, but not limited to, injunctive relief in the form return of the Asset.

## COUNT II
## QUANTUM MERUIT

36. That the Plaintiff incorporates herein by reference in its allegations in paragraph 1 though 36, word for word, as if same were entirely replead.

37. That the Plaintiff provided the Assets to the Defendants based upon the

8

Defendants' promise to compensate the Plaintiff according to the APA as outlined above.

38. That the Defendant received the benefit of the Agreement.

39. That the Defendant has failed to pay the Plaintiff funds owed.

40. That as a result of the Defendants' failure and refusal to pay the Plaintiff the amount owed, the Defendant has been unjustly enriched.

41. That as a direct and proximate result of the Defendant's failure or refusal to pay, the Plaintiff has sustained damages.

42. That equity and justice require the Defendants to pay the Plaintiff in adherence to the Agreement formed between the two parties.

43. That the Plaintiff is without a remedy absent this Honorable Court's intervention.

**WHEREFORE,** the Plaintiff prays for a Judgement against the Defendant in the amount of the Earn Out Fee together with interest, costs, and attorney's fees as well as any other fees that this Honorable Court see's fit to award as well as injunctive relief including, but not limited to, injunctive relief in the form return of the Asset.

## COUNT III
## STATURORY CONVERSION

44. That the Plaintiff incorporates herein by reference in its allegations in paragraph 1 though 44, word for word, as if same were entirely replead.

45. That Defendant converted Plaintiff's property, namely the Assets outlined in the APA, to the Defendants own use.

46. That the Defendant's actions caused the Plaintiff pursuant to MCL 600.2919a.

47. The Defendants unlawful possession of the assets at that time prevented the Plaintiffs from using or profiting from their own property.

48. Defendant is therefore liable to Plaintiff for treble damages.

**WHEREFORE,** the Plaintiff prays for a Judgement against the Defendant in the amount of the three times the total of the Earn Out Fee together with interest, costs, and attorney's fees as well as any other fees that this Honorable Court see's fit to award as well as injunctive relief including, but not limited to, injunctive relief in the form return of the Asset.

## COUNT IV
## FRAUD AGAINST PRODUCTS OF PERFORMANCE

49. That the Plaintiff incorporates herein by reference in its allegations in paragraph 1 though 49, word for word, as if same were entirely replead.

50. Plaintiff was told by CEO of GO NORTH, Johan Hallenby that GO NORTH had fallen under hard times and that this was the reason for failure to pay.

51. That in February of 2024 Hallenby told Plaintiff that bond holders and investors was set to go through by February 9th, 2024.

52. On February 15th of 2024 GO NORTH informed Plaintiff that they would not be distributing payments in accordance with the APA.

53. On February 17th of 2024, GO NORTH issued a press release stating GO NORTH AB had restructured their debt and had received a distribution worth at least ten million USD by the bondholders to aid in Defendant's financial situation.

54. That Defendant was at that time still in possession of Assets of CasterMaster.

**WHEREFORE,** the Plaintiff prays for a Judgement against the Defendant in the amount of the three times the total of the Earn Out Fee together with interest, costs, and attorney's fees as well as any other fees that this Honorable Court see's fit to award as well as injunctive relief including, but not limited to, injunctive relief in the form return of the Asset.

                                        Respectfully submitted,

                                        By: <u>Odey K. Meroueh</u>
                                        (P 76460)
                                        Attorney for Plaintiff

Dated: March 20, 2024