# EXHIBIT A

DocuSign Envelope ID: 5C4BC5BD-8D38-460B-A5DC-B3B5A6AB56BA

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made as of the Effective Date, as defined below, by and between Products of Performance LLC, EIN # 47-4069213, the owner of the Caster Master brand ("Seller") and Go North Group AB 559252-2188 ("Buyer"), collectively referred to as the ("Parties"). This Agreement is facilitated by Empire Flippers, LLC ("Broker").

RECITALS:

WHEREAS, Seller is the owner and operator of an Amazon FBA business and related domain names commonly referred to as Caster Master, which is listed for sale on Broker's marketplace under Listing No.62988 (the "Business"); and

WHEREAS, Seller desires to sell of all Seller's Assets related to the Business and Buyer desires to purchase said Assets upon the terms and conditions of this Agreement:

NOW, THEREFORE, the Parties agree as follows:

(1) **Purchase of Assets**.  In consideration of the Purchase Price, Seller hereby sells, assigns, transfers, conveys and delivers to Buyer, and Buyer hereby purchases from Seller right, title and interest in each of the following (collectively referred to as the "Assets"):

    (a) The Amazon FBA account associated with the Business, including all associated accounts, content, data, customer lists, databases, files, and artwork;

    (b) The http://www.castermastercups.com domain name and its associated domain name registration;

    (c) All accounts, content, data, customer lists, databases, files, and artwork associated with the Business;

    (d) All trademark and trade names and related goodwill associated with the Business and all copyright rights pursuant to 17 U.S.C. § 106 associated with the Business;

    (e) All licenses for applications or plugins used in connection with the Business;

DocuSign Envelope ID: 5C4BC5BD-8D29-460B-A5DC-D3B5A6AB56BA

(f)     All prepaid expenses and subscriptions as of the Effective Date of this Agreement associated with the Business; and,

(g)     All inventory currently housed at Amazon Fulfillment Centers, in 3PL, en route and currently being manufactured.  ("Inventory").

(2)   **Exemptions from Assets**. The following are specifically exempted from the sale: Seller's cash within its accounts.

(3)   **No Assumption of Liabilities**.  This is an Asset Sale only.  Buyer is not assuming, and shall not be deemed to have assumed, any liabilities or obligations of Seller of any kind or nature whatsoever (whether contractual, statutory or otherwise).

(4)   **Purchase Price**.  The purchase price for the Assets ("Purchase Price") is comprised of the following: (a) the Upfront Payment, (b) Earn Out Payment 1, and (c) Earn Out Payment 2, all as further defined below. Buyer agrees to pay and Seller agrees to accept the Purchase Price for the sale of the Assets.

(a)     <u>**Upfront Payment**</u>: Buyer shall pay to Seller an Upfront payment of $1,002,644 USD ("Upfront Payment"). Buyer shall deposit the Upfront Payment with Broker no later than five (Swedish) business days following the Effective Date, and upon receipt Broker shall provide Seller with notice of said deposit.

(b)     <u>**Earn Out Payment 1:**</u> Buyer shall pay to Seller $250,661 USD ("Earn Out Payment 1") if Gross Revenue from the Business totals at least $1,566,413 USD during the 12 month period immediately following the Effective Date ("Earn Out Period"). For the avoidance of doubt, no Earn Out Payment 1 shall be paid if Gross Revenue is less than $1,566,413 USD during the Earn Out Period. Earn Out Payment 1 is to be paid by Buyer to Broker within 30 days after the end of the Earn Out Period.

For purposes of calculating Earn Out Payment 1, "Gross Revenue" shall mean any revenue derived from any source during the Earn Out Period that relates to or is attributable to the Assets.

(c)     <u>**Earn Out Payment 2:**</u> Earn Out Payment 2:  Buyer shall pay to Seller a payment ("Earn Out Payment 2") equal to 50% of all Net Profit over $345,000 USD earned during the Earn Out Period. Earn Out Payment 2 is uncapped. For the avoidance of doubt, no Earn Out Payment 2 shall be paid if Net Profit is less than $345,000 USD during the Earn Out

Period. Earn Out Payment 2 is to be paid by Buyer to Broker within 30 days after the end of the Earn Out Period.

> For purposes of calculating Earn Out Payment 2, "Net Profit" shall mean: any Gross Revenue derived from any source during the Earn Out Period that relates to or is attributable to the Assets minus Amazon and Walmart fees minus Cost Of Goods Sold minus Marketing costs (promotions + advertising expenses) minus a corporate overhead fee, which fee will not exceed 5% of Gross Revenue. In addition to the other conditions set forth above regarding Earn Out Payment 2, Net Profit must be a positive number in order for Earn Out Payment 2 to be payable to Seller. Earn Out Payment 2 is also contingent on the Seller making themselves available for the designated hours detailed in the table in section (4) g) for support during the Earn Out Period on tasks directly related to growth and maintenance of the Assets being sold under this Agreement.

(d)     **Inventory Payment**: Buyer shall pay to Seller for Seller's inventory ("Inventory Payment") paid at landed cost. Buyer shall make the Inventory Payment direct to Broker. Broker is not entitled to a commission on the Inventory Payment. Broker shall release the Inventory Payment to Seller consistent with the terms of this Agreement. The Inventory Payment is subject to the reconciliation provisions of this Agreement below.

(e)     **Termination due to late payment of Upfront Payment**: Should Buyer not pay the Upfront Payment within the timeframe set out in Clause (4)(a), Seller shall have the right to terminate the Agreement and shall then be entitled to full possession of the Assets. Seller shall have such termination right until having received a notice from Broker as set out in Clause (4)(a). Seller may make its election to terminate known to Buyer by delivery of a notice of termination to Buyer and a notice to Broker to transfer any of the Assets to Seller, if Broker is in possession of any Assets. Such termination shall be immediately effective, and Buyer agrees to fully comply and cooperate to re-transfer any of the Assets to Seller. Upon termination according to this Clause (4)(e), Buyer is entitled to refund of any portion of the Purchase Price which has been paid (as applicable), and the Parties shall instruct Broker to return such payment to Buyer (in which case Broker shall however have no right to Commission (as defined below)). Buyer's failure to pay the Upfront Payment within the timeframe set out in Clause (4)(a) shall not be deemed as an event of Buyer's Default or otherwise as a breach of contract.

DocuSign Envelope ID: 5C4BC5BD-8D39-460B-A5DC-B3B5A6AB56BA

(f)      **<u>Right to Audit</u>**:  During any Earn Out Period, Broker shall have the right to audit the account in order to verify any Earn Out Payment which might be due hereunder.

(g)      **<u>Support period:</u>** Payment of Earn Out Payment 2 is reliant on the seller providing the relevant support detailed below and starting from the completed migration date :

Day 1 to 90 - Up to 20 hours per month.
Day 91 to 180 - Up to 10 hours per month
Day 181 to 365 - Up to 5 hours per month

<u>All communications during the Support Period may be conducted by telephone, email, or other online means of communication. All communications shall be done during normal business hours. Buyer shall reimburse Seller for all out-of-pocket expenses associated with the Support Period. If Buyer does not request any support, Seller is not under any obligation to provide support.</u>

(5)      **Payment of Purchase Price**. No later than five (Swedish) business days following the Effective Date, if not already completed, Buyer shall deposit the Upfront Payment with Broker. If any other payments are required to complete payment of the Purchase Price, Buyer shall make all payments when due direct to Broker. Broker shall distribute the Purchase Price, or if applicable, each portion of the Purchase Price, consistent with the terms of this Agreement.

(6)      **Payment of Broker's Commission**. The Parties agree Broker is entitled to a commission equal to 10.95% ("Commission") of the applicable components of the Purchase Price that are paid by Buyer, subject to the terms and conditions of this Agreement. Broker is not entitled to receive any Commission on the Inventory Payment, the Residual Revenue, or the True-Up Amount. The Parties agree payment of Broker's Commission will be deducted from the applicable components of the Purchase Price that are paid to Seller.

(7)      **Migration Process**.

(a)      Subsequent to the Effective Date of this Agreement and Buyer paying the Upfront Payment to Broker, the process to transfer the Assets to the Buyer will begin ("Migration Process"). The Parties understand and agree that the Migration Process typically takes 2 to 8 weeks to complete, but could take substantially longer. The Parties acknowledge and agree that Broker cannot guarantee a specific timeframe to complete the Migration Process;

(b)      The Migration Process is complete when the Buyer or the Broker, in its sole reasonable discretion and in good faith, determines that a sufficient portion of the Assets have been transferred to Buyer ("Completed

Migration"). It is possible that some portion of the Assets will continue to be transferred to Buyer after the Completed Migration.

(c)    Broker may cancel any Migration Period and sale if either the Seller or the Buyer has materially breached a material term of this Agreement, including but not limited to representations regarding the Assets' financial information, performance information, work required to operate the Assets, or other information important to the Asset, as determined in the Broker's sole reasonable and absolute discretion and in good faith. If Broker determines such a cancellation is required, Broker will cancel the sale, the Asset will be returned to Seller, and the Upfront Payment will be returned to Buyer. The Parties agree to cooperate to complete these actions;

(d)    Either Party's intentional failure to complete the Migration Process after execution of this Agreement is a material breach of the Agreement; and,

(e)    The Parties agree to provide Broker all necessary information upon request to facilitate the Migration Process.

(8)    **Release of the Purchase Price**.

(a)    Immediately after Completed Migration but in no event later than seven (7) days following Completed Migration, Broker will release 89.05% of the Upfront Payment to Seller and Broker will retain the remaining 10.95% as a portion of its Commission.

(b)    Immediately but in no event later than seven (7) days after the Broker has received Earn Out Payment 1 from Buyer, if applicable, Broker will pay to the Seller an amount equal to Earn Out Payment 1 less Broker's Commission (10.95%).  Immediately but in no event later than seven (7) days after the Broker has received Earn Out Payment 2 from Buyer, if applicable, Broker will pay to the Seller an amount equal to Earn Out Payment 2 less Broker's Commission (10.95%).

(9)    **Reconciliation of Inventory Payment and All Sales Channels Accounts**.

(a)    Reconciliation of Inventory Payment and All Sales Channels. (a) The Parties understand and agree that Buyer owns the Assets when all parties have signed this Agreement. However, Parties understand and agree that revenue associated with all sales channel may continue to accumulate in Seller's accounts account prior to Buyer's possession of the same ("Residual Sales Revenue").

(b)    The Parties understand and agree the Inventory Payment is based on an estimate of the value of the Inventory. However, fluctuations in the

value and amount of Inventory may occur between up to the Effective Date of this Agreement which may cause the Inventory Payment to be inaccurate ("Inventory Discrepancies").

(c)    The Parties agree that within sixty (60) days of the Completed Migration, the Parties shall reconcile any Residual Sales Revenue issues and Inventory. Specifically, the Parties agree to pay or receive money to account for Residual Sales Revenue or Inventory Discrepancies within this time-period.

(10)  **Buyer Default**.

(a)    The following shall be deemed an event of Buyer's Default: 1) Buyer fails to timely complete the required Earn Out Payments; 2) Buyer breaches a term of this Agreement; 3) if prior to completing the required Earn Out Payments Buyer or another person shall file a petition for relief for Buyer under the bankruptcy laws, or shall make an assignment for the benefit of creditors for Buyer, or if a receiver of any property of the Buyer be appointed in any action, suit or proceeding by or against Buyer, or if Buyer shall admit to any creditor or to Buyer that it is insolvent, or if the interest of Buyer in the Assets shall be sold under execution or other legal process.

(b)    Upon the occurrence of an event of Default, Seller shall have the right to terminate the Agreement and shall be entitled to full possession of the Assets. Seller may make its election to terminate known to Buyer by delivery of a notice of termination to Buyer and a notice to Broker to transfer any of the Assets to Seller, if Broker is in possession of any Assets. Such termination shall be immediately effective and Seller shall be entitled to forthwith commence an action in summary proceedings to recover possession of the Assets. Buyer agrees to fully comply and cooperate to transfer the Assets to Seller. Upon the occurrence of an event of Default, Buyer is not entitled to any refund of any portion of the Purchase Price. Further, the Parties agree Broker is not liable in any manner whatsoever for its transfer of any Assets to Seller consistent with this Agreement. Broker has no obligation to refund any portion of its Commission upon a Default.

(c)    Anything contained in this Agreement to the contrary notwithstanding, on the occurrence of an event of default, the Seller or Broker shall not exercise any right or remedy under any provision of this Agreement or applicable law unless and until: (a) the Seller or Broker has given written notice thereof to the Buyer, and (b) the Buyer has failed to cure the event of default within fifteen (15) days.

(11)  **Seller Warranties.** Seller warrants that:

Asset Purchase Agreement
Page 6 of 14

(a)     Seller warrants and agrees that he or she is either above the age of majority in his or her nation, state, province, territory, or city, or the age of eighteen (18), whichever is greater. Seller warrants that he or she is of sound mind and has the capacity to contract.

(b)     Seller has the full power and legal authority to execute this Agreement. If Seller is making this representation on behalf of a business entity or third party, Seller warrants that he or she has actual authority to act as an agent of that business entity and third party and have the right and ability to agree to the terms of this Agreement on behalf of that third party or business entity.

(c)     Seller has clear and unencumbered title to the Asset and all related assets to be sold through the Broker's Marketplace, including all intellectual property rights;

(d)     Seller has not placed the Asset to be sold subject to a mortgage, pledge, lien, or encumbrance, except for those taxes which shall be prorated as of the date of the Completed Migration;

(e)     Seller has truthfully and accurately provided details relating to the Asset to Broker including, but not limited to, details regarding revenue, profit, expenses, pageviews, work required per week, creation date, and use of a private blog network, if any;

(f)     There are no bankruptcy or reorganization proceedings currently filed against Seller that would impede its ability to complete this Agreement; and,

(g)     To the best of the Seller's knowledge, there is no lawsuit or pending charge against the Asset.

(h)     To Seller's Knowledge, no supplier has ceased, or intends to cease, to supply goods or services to the Business or to otherwise terminate, materially change pricing terms or materially reduce its relationship with the Business.

(12)    **Third Party Liability/ Legal Claims**

No claims have been made against the Seller in relation to the Business or any part thereof.

To the best of the Seller's knowledge, no complaint has been made in respect of goods sold by the Seller that includes such rights which are included in the

Business other than complaints which are standard in the industry, and there is no reason to assume that such atypical complaints will be made.

(13)   **Conducting Of The Business**

The Seller has carried out the operation of the Business (and all actions taken under and in relation to sale of products under the Seller's FBA account has been carried out) in accordance with any and all third party policies and terms governing such operations.

The Seller complies with the Amazon terms of service and other Amazon instructions and policies applicable to the Seller for the purpose of the Business.

To the extent the Seller has been instructed by Amazon (or anyone acting on behalf of Amazon) to cease breaching the Amazon terms of service or any Amazon instructions/policies, the Seller has complied with such instructions. To the extent the Seller has otherwise been committing a breach of the Amazon terms of service or any Amazon instructions/policies, the Seller has ceased committing such breach.

(14)   **Maintenance of the Assets**.

(a)      Seller agrees to maintain the Asset, as it was leading up to sale, through the Completed Migration to the best of its ability. This includes, but is not limited to, maintaining third party links on its website and other websites and any marketing, advertising, or other referral source, if applicable. Seller shall take no active action to remove any third-party links;

(b)      Seller agrees to maintain accurate and up-to-date Asset records that it compiles throughout its normal course of business through the Completed Migration, and deliver any and all Asset records to Buyer prior to the Completed Migration; and,

(c)      Seller agrees not to take any actions in relation to the Asset outside of normal business practices throughout the Migration Process.

(15)   **Buyer Warranties**. Buyer warrants that:

(a)      Buyer has full power and legal authority to execute this Agreement;

(b)      Buyer has sufficient funds to complete the transaction at the Purchase Price;

(c)      There are no bankruptcy or reorganization proceedings currently filed against Buyer that would impede its ability to complete this Agreement;

DocuSign Envelope ID: 5C4BC5BD-0D30-460B-AFDC-D3BEA6AB56BA

(d)     None of Buyer's actions in executing this Agreement will violate or have violated any laws or agreements;

(e)     Buyer has had the opportunity to fully inspect the Asset for sale and has conducted an acceptable amount of due diligence into the purchase and wishes to purchase the Asset at the Purchase Price;

(f)     Buyer is aware of the risks involved with purchasing the Asset; and

(g)     Buyer is reasonably skilled in the art of running an e-commerce business like the Business and will not purposefully take an action to subvert performance of the Business during the any Earn Out Period. For the avoidance of doubt, Buyer shall however always have the right to, with reference to commercial grounds, cease with the offering of such products which are included among the Assets. Should Buyer act disloyally in order to affect the amount of the Earn Out Payments, the amount of the Earn Out Payments shall be adjusted as if Buyer would not have acted in such way (and this shall be the only penalty).

(16)    **No Contingencies.** Except as otherwise provided by this Agreement, Buyer had the opportunity to fully inspect the Assets and desires to purchase the Assets. Buyer agrees to buy the Assets "as is." Upon Completed Migration, Buyer hereby waives any and all contingencies in connection with its purchase of the Assets, including any discrepancies, fluctuations, or changes in the performance of the Asset and specifically its gross revenue, net revenue, expenses, traffic, and other metrics of performance, including any discrepancies, fluctuations, or changes in the performance of the Asset during the Migration Process.

(17)    **Remedies for Material Breach**. The Parties, including the Broker, understand and agree that monetary damages would not be a sufficient remedy for any breach of this Agreement and that, in addition to monetary damages and all other rights and remedies available at law or according to the terms of this Agreement, the non-breaching Party, including the Broker, shall be entitled to equitable relief, including injunctive relief, specific performance and/or the granting of an immediate restraining order or preliminary injunction (without posting bond) enjoining any such breach or reasonably anticipated breach as a remedy. Such equitable remedies shall not be the exclusive remedies available to the Parties, including the Broker, for breach of this Agreement, but shall be in addition to all other remedies available at law, equity or according to the terms of this Agreement. At all times, Broker retains complete discretion to cancel any sale and/or Migration Process.

(18)    **Non-Compete Agreement.** Seller agrees not to create or operate an Asset that would directly compete with Buyer for at least three years.

(19)    **Broker Disclaimer.** Except as otherwise provided by this Agreement, **all sales are final and there are no refunds**. Earnings and traffic may decline due to Google

updates, increased competition, mismanagement by the Buyer, or other factors. The Parties agree that Broker makes no guarantees or warranties, written or implied, of the future performance of the Assets. Buyer specifically agrees and acknowledges that it assumes all risk in this purchase.

(20)  **Indemnification.**

    (a)    Buyer agrees to indemnify Seller from all liabilities arising out of Buyer's operation of the Assets after the Completed Migration;

    (b)    Seller agrees to indemnify Buyer from all liabilities arising out of Seller's operation of the Asset prior to the Completed Migration; and,

    (c)    The Parties agree to indemnify Broker from and against any and all claims, demands, judgments, liabilities, costs, and fees, including attorneys' fees, arising out of or related to this Agreement, including but not limited to the Buyer or Seller's breach of any provision of this Agreement. The Parties' obligation to defend Broker will not provide the Parties with the ability or right to control Broker's defense, and Broker reserves the right to control its defense, including, but not limited to, the choice to litigate or settle and the choice of counsel.

**Limitation**                     **of**                     **Liability**

THE PARTIES AGREE THAT THE BROKER'S SERVICES ARE PROVIDED ON AN AS-IS BASIS AND WITHOUT WARRANTY OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF QUALITY, ACCURACY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SECURITY, NON-INFRINGEMENT, AND TITLE.

THE PARTIES AGREE THAT BROKER WILL NOT BE HELD RESPONSIBLE OR LIABLE FOR ANY CLAIMS, DAMAGES, JUDGMENTS, CHARGES, OR FEES ARISING OUT OF OR RELATED TO THE PARTIES' USE OF THE BROKER'S SERVICES, INCLUDING, BUT NOT LIMITED TO, COMPENSATORY DAMAGES, CONSEQUENTIAL DAMAGES, SPECIAL DAMAGES, INCIDENTAL DAMAGES, PUNITIVE DAMAGES, EXEMPLARY DAMAGES, COSTS AND ATTORNEYS' FEES, DAMAGES ARISING OUT OF ERRORS OR OMISSIONS, AND DAMAGES ARISING OUT OF THE UNAVAILABILITY OF THE EMPIRE FLIPPERS' WEBSITE OR SERVICES OR OTHER DOWNTIME.

YOU ACKNOWLEDGE THAT YOUR USE OF THE SERVICES IS AT YOUR SOLE RISK AND THAT BROKER'S LIABILITY IS LIMITED $1,000.

EXCEPT IN THE CASE OF FRAUD, WILLFUL MISCONDUCT OR INTENTIONAL MISREPRESENTATION, NEITHER PARTY'S LIABILITY TO THE OTHER UNDER

DocuSign Envelope ID: 6C4BC5BD-0D30-480B-AFDC-D3BEA6AB56BA

THIS AGREEMENT SHALL EXCEED THE AMOUNTS ACTUALLY PAID BY BUYER TO SELLER HEREUNDER FOR THE ASSETS.

(21) **Notices**.  If any notification is required under this Agreement or by law, such notification shall be deemed reasonable and properly given as detailed below:

    (a)    Seller, notice effective the same day if delivered by email to productsofperformance@gmail.com@gmail.com;

    (b)    Buyer, notice effective the same day if delivered by email to lets@gonorth.co;

    (c)    Broker, notice effective the same day if delivered by email to alex@empireflippers.com;

or at such other address as shall be given in writing by one party to the others.

(22) **General Provisions.**

    (a)    <u>Fair Market Value.</u> The Parties each acknowledge the Purchase Price represents fair market value.

    (b)    <u>Costs.</u> The Parties agree to pay their own costs and expenses incurred with respect to this Agreement.

    (c)    <u>Valid and Binding Agreement</u>. This Agreement represents a binding legal obligation and is enforceable in accordance with its terms and is binding and shall inure to the benefit of each Parties' respective heirs, legal representatives, successors, and assigns.

    (d)    <u>Confidentiality</u>. The Parties agree to maintain complete confidentiality regarding this Agreement.

    (e)    <u>Waivers</u>. A waiver by either Party to any provision of this Agreement does not constitute a waiver of any other provision of this Agreement.

    (f)    <u>Notices.</u> Any notice required under this Agreement shall be in writing and shall be deemed properly given when emailed and sent by certified mail, return receipt requested, to the contact information contained in this Agreement.

    (g)    <u>Successors or Assigns</u>.  The parties agree that this Agreement shall be binding on their respective successors and assigns, and that the term "Seller" and the terms "Purchaser or Buyer" as used herein shall be deemed to include, for all purposes, the respective designees,

successors, assigns, heirs, executors and administrators. Notwithstanding the foregoing, this Agreement and the rights and obligations of the parties hereunder shall not be assignable, in whole or in part, by either party without the prior written consent of the other party.

(h)     No Third-Party Beneficiaries. Except as otherwise provided, nothing in this Agreement will provide any benefit to any third party or entitle any third party to any claim, cause of action, remedy, or right of any kind. This Agreement is not a third-party beneficiary contract.

(i)     Invalidity of Particular Provisions.  The unenforceability or invalidity of any provision or provisions of this Agreement shall not render any other provision or provisions herein or this Agreement itself invalid.

(j)     Sections and Headings. The sections and headings in this Agreement are for organization and clarification purposes only and should not be interpreted as part of this Agreement.

(k)     Choice of Laws and Venue. You agree that any and all claims arising out of or related to this Agreement, including its validity, interpretation, breach, violation, or termination, shall be brought in the exclusive forum of the state or federal courts located in Kalamazoo County, Michigan and pursuant to Michigan law. The Parties expressly consent to personal and subject matter jurisdiction in this forum. The prevailing party is entitled to payment of its costs, expenses, and attorney fees by the non-prevailing party for actions, disputes, or litigation arising out of or related to this Agreement. This Agreement is deemed to have been negotiated, executed, and performed exclusively within Kalamazoo County, Michigan. YOU UNDERSTAND AND AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT BROUGHT AGAINST BROKER MUST BE BROUGHT WITHIN ONE (1) YEAR OF THE DATE ON WHICH THE DISPUTE AROSE.

(l)     Entire Agreement. This Agreement is the entire agreement between the Parties. This Agreement supersedes any prior written or oral agreement between the Parties.

(m)     Severability. If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

(n)     <u>Amendments.</u> This Agreement may be amended in writing if both Parties sign and date in writing.

(o)     <u>Effective Date.</u> The Effective Date of this Agreement is the date it is signed by Buyer, Seller, and Broker, whichever is later, but all are required.

(23)    **Understanding and Agreement**. The Parties had sufficient time and ability to be represented by legal counsel in connection with signing this Agreement, have read and understand the Agreement, and are signing this Agreement out of their own free will and volition.

(24)    **Removal of Family Specific Photos**. Buyer agrees to remove all photos and/or references of Seller and his family from the Business, including all Amazon product pages, within 12 months from the Effective Date. Seller shall consult with Buyer regarding a marketing story in association with the removal of the photos/references.

IN WITNESS WHEREOF, the Buyer and the Seller have each executed and delivered this Agreement as of the Effective Date below.

BUYER

BY:   Wilhelm Bergman

Date:  10/30/2022

BUYER

BY:   Scott Henshaw

Date:  10/30/2022

BUYER

BY:   Johan Hallenby

Date:  10/30/2022

SELLER

BY:   Ryan Hofacre

Date:  10/30/2022

DocuSign Envelope ID: 5C4BC5BD-0D30-460B-AE0C-D3BEA6AB56BA

BROKER – EMPIRE FLIPPERS, LLC

BY: Alex Champagne

Date: 10/30/2022

# EXHIBIT B



**Wyoming Secretary of State**
State Capitol Building, Room 110
200 West 24th Street
Cheyenne, WY 82002-0020
Ph. 307.777.7311
Fax 307.777.5339
Email: Business@wyo.gov

**Ed Murray, WY Secretary of State**
**FILED: 06/03/2015 07:14 AM**
**ID: 2015-000688010**

# Limited Liability Company
## Articles of Organization

1. Name of the limited liability company:

Products of Performance LLC

2. Name and physical address of its registered agent:
*(The registered agent may be an individual resident in Wyoming, a domestic or foreign entity authorized to transact business in Wyoming, having a business office identical with such registered office. **The registered agent must have a physical address in Wyoming.** A Post Office Box or Drop Box is not acceptable. If the registered office includes a suite number, it must be included in the registered office address.)*

29DollarAgent.com, Inc.  109 E 17th St STE 4, Cheyenne WY 82001

3. Mailing address of the limited liability company:

109 E 17th St STE 4, Cheyenne WY 82001

4. Principal office address:

109 E 17th St STE 4, Cheyenne WY 82001

Signature:
*(Shall be executed by an organizer.)*

Date: 05/21/2015
*(mm/dd/yyyy)*

Print Name: Ryan Hofacre

Contact Person: Ryan Hofacre

Daytime Phone Number: (614) 204-6151

Email: rhofacre@yahoo.com

Received
MAY 27 2015
Secretary of State
Wyoming

*LLC-ArticlesOrganization - Revised 10/2012*



**Wyoming Secretary of State**
State Capitol Building, Room 11
200 West 24th Street
Cheyenne, WY 82002-0020
Ph. 307.777.7311
Fax 307.777.5339
Email: Business@wyo.gov

# Consent to Appointment by Registered Agent

I, 29DollarAgent.com, Inc.
*(name of registered agent)* , registered office located at

109 E 17th St STE 4, Cheyenne WY 82001

voluntarily consent to serve

**\*** *(registered office physical address, city, state & zip)*

as the registered agent for  Products of Performance LLC
*(name of business entity)*

I hereby certify that I am in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

Signature: *Celyssa Trevizo*                Date: 5/27/2015
*(Shall be executed by the Registered agent.)*                *(mm/dd/yyyy)*

Print Name: Celyssa Trevizo     Daytime Phone: (855) 552-2436

Title: Authorized Agent     Email: support@29dollaragent.com

Registered Agent Mailing Address
(if different than above):

---

**\*If this is a new address, complete the following:**

Previous Registered Office(s):

I hereby certify that:
- After the changes are made, the street address of my registered office and business office will be identical.
- This change affects every entity served by me and I have notified each entity of the registered office change.
- I certify that the above information is correct and I am in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

Signature: _____                Date: _____
*(Shall be executed by the registered agent.)*                *(mm/dd/yyyy)*

Checklist
☐ Submit one **originally signed** consent to appointment and one exact photocopy.

RAConsent – Revised 12/11

# STATE OF WYOMING
## Office of the Secretary of State

I, EDWARD F. MURRAY, III, SECRETARY OF STATE of the STATE OF WYOMING, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

CERTIFICATE OF ORGANIZATION

**Products of Performance LLC**

Accordingly, the undersigned, by virtue of the authority vested in me by law, hereby issues this Certificate.

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **3rd** day of **June**, **2015**.

Secretary of State

By: _____ Jennifer Trabing

Filed Date: 06/03/2015

EXHIBIT C




CasterMaster › Deals

+ Follow



HOME   ROUND COLLECTION   SQUARE COLLECTION   SHOP BY SIZE   ABOUT US   DEALS

Search all CasterMaster

---



15% off  Big Spring Deal

CasterMaster Non Slip Furniture Pads- 3x3 Square Rubber Anti...

★★★★★ 5,440

$21$^{24}$ ($2.36/Count)

$24.99 (15% off)

✓prime

Get it by Tuesday, March 26

Add to Cart

---



17% off  Big Spring Deal

CasterMaster Non Slip Furniture Pads- 3x3 Square Rubber Anti...

★★★★★ 5,440

$14$^{98}$ ($3.75/Count)

$17.99 (17% off)

✓prime

Get it by Tuesday, March 26

Add to Cart

---



39% off  Big Spring Deal

CasterMaster Non Slip Furniture Pads- 2x2 Square Rubber Anti...

★★★★★ 5,440

$11$^{04}$ ($2.76/Count)

$17.99 (39% off)

✓prime

Get it by Tuesday, March 26

Add to Cart

---



39% off  Big Spring Deal

CasterMaster Non Slip Furniture Pads- 2x2 Square Rubber Anti...

★★★★★ 5,440

$11$^{04}$ ($2.76/Count)

$17.99 (39% off)

✓prime

Get it by Tuesday, March 26

Add to Cart

---



25% off  Big Spring Deal

Save 5% with coupon

CasterMaster 3X3 Square Rubber Furniture Caster Cups with...

★★★★☆ 6,151

$13$^{49}$ ($3.37/Count)

$17.99 (25% off)

✓prime

Get it by Tuesday, March 26

See buying options






# EXHIBIT D

M Gmail                                               CasterMaster <productsofperformance@gmail.com>

# [Empire Flippers Support] Update: Earnout - Listing# 62988-FBA-Caster Master
40 messages

**Adam Tovey (Empire Flippers Support)** <support@empireflippers.com>        Thu, Sep 21, 2023 at 10:35 AM
Reply-To: Empire Flippers Support <support@empireflippers.com>
Cc: Accounting <accounting@empireflippers.com>, Linda Melin <linda.melin@gonorth.co>, Ryan Hofacre
<productsofperformance@gmail.com>

Please reply above this line. Do not use inline reply.

You are registered as a CC on this support request (support.empireflippers.com/hc/requests/236506).
Reply to this email to add a comment to the request.

 **Adam Tovey** (Empire Flippers Support)
Sep 21, 2023, 3:35PM GMT+1

Hi Wilhelm, Linda & Ryan,

I hope all is going well with you!

The earnout calculations for Listing# 62988-FBA-Caster Master are coming up.

**@Wilhelm & Linda:** Can you please provide an update on the current performance during this period?

**As a reminder, these are the agreed-upon stipulations of the earnout terms:**

> Earn Out Payment 1: Buyer shall pay to Seller $250,661 USD ("Earn Out Payment
> 1") if Gross Revenue from the Business totals at least $1,566,413 USD during the 12
> month period immediately following the Effective Date ("Earn Out Period").

*The effective date was 30 October 2022*

**Please note the earnout due dates below:**
*The Earn Out Payments are due to EF by 29 November 2023*

> Earn Out Payment 1 is to be paid by Buyer to Broker within 30 days after the end of
> the Earn Out Period

Best Regards,

Adam Tovey

Migrations Advisor | Empire Flippers

e: adamt@empireflippers.com

p: +1 509 207 4162

Skype: adam_tovey

Schedule a time to speak with me -

https://app.hubspot.com/meetings/adamt1

---

 **Adam Tovey** (Empire Flippers Support)

Feb 20, 2023, 10:02PM GMT

Hi Ryan, Wilhelm and Linda,

I have created this thread to track future earnout payments for Listing# 62988-FBA-Caster Master. You are all connected on this email thread so any correspondence regarding the earnout payments can be discussed here.

**As a reminder, these are the agreed-upon stipulations of the earnout terms:**

> Earn Out Payment 1: Buyer shall pay to Seller $250,661 USD ("Earn Out Payment 1") if Gross Revenue from the Business totals at least $1,566,413 USD during the 12 month period immediately following the Effective Date ("Earn Out Period").

> Earn Out Payment 2: Earn Out Payment 2: Buyer shall pay to Seller a payment ("Earn Out Payment 2") equal to 50% of all Net Profit over $345,000 USD earned during the Earn Out Period. Earn Out Payment 2 is uncapped. For the avoidance of doubt, no Earn Out Payment 2 shall be paid if Net Profit is less than $345,000 USD during the Earn Out
> Period.

*The effective date was 30 October 2022*

**Please note the earnout due dates below:**

*The Earn Out Payments are due to EF by 29 November 2023*

> Earn Out Payment 1 is to be paid by Buyer to Broker within 30 days after the end of the Earn Out Period

Please let me know if any parts of these terms are incorrect or require clarification.

*The APA is attached for your reference.*

Kindly,

Adam Tovey

Migrations Advisor | Empire Flippers

e: adamt@empireflippers.com

p: +1 509 207 4162

Skype: adam_tovey

Schedule a time to speak with me -

https://app.hubspot.com/meetings/adamt1

Attachment(s)

Caster_Master_APA.pdf

[ZJ2ENZ-NE521]

---

**CasterMaster** <productsofperformance@gmail.com>      Thu, Sep 28, 2023 at 12:55 PM
To: Empire Flippers Support <support@empireflippers.com>
Cc: Accounting <accounting@empireflippers.com>, Linda Melin <linda.melin@gonorth.co>

Hey Whilhem and Linda,

Yeah, just checking in on this as well. I know it's not for a few more weeks, but just wondering if everything on your end is a go and if there is anything you need from us.

Thanks,
Ryan & Angie

[Quoted text hidden]

---

**Wilhelm Bergman (Empire Flippers Support)** <support@empireflippers.com>      Fri, Sep 29, 2023 at 3:47 AM
Reply-To: Empire Flippers Support <support@empireflippers.com>
Cc: Accounting <accounting@empireflippers.com>, Linda Melin <linda.melin@gonorth.co>, Ryan Hofacre
<productsofperformance@gmail.com>

Please reply above this line. Do not use inline reply.

You are registered as a CC on this support request (support.empireflippers.com/hc/requests/236506).
Reply to this email to add a comment to the request.

 **Wilhelm Bergman**
Sep 29, 2023, 3:47AM EDT

Hey all,

I hope you are all doing great :)

You are indeed early with this request.

But it seems like we will hit the stability payment with a good margin, see attached payment report for the Last Twelve Months (LTM).

# EXHIBIT E

# AMENDMENT AGREEMENT

This Amendment Agreement (the "**Amendment Agreement**") has on the date when it is signed by both parties (the "**Agreement Date**") been entered into by and between:

(1) **Go North Group AB**, reg. no 559252-2188 ("**Go North**"), having its address at Norra Allégatan 5, 413 01 Göteborg, Sweden, and email address legal@gonorth.co; and

(2) **Products of Performance LLC,** EIN # 47-4069213.

The Parties in (1)-(2) above are in this Agreement collectively referred to as the "**Parties**" and individually as a "**Party**". This Agreement is facilitated by Empire Flippers, LLC ("**Broker**").

**1.   INTRODUCTION**

The Parties have on 10/30/2022 entered into an Asset Purchase Agreement (the "**APA**") regarding the sale and purchase of an Amazon FBA business under the brand Caster Master. All capitalized terms in this Amendment Agreement shall have the same meaning as set forth in the APA, unless otherwise stated herein. The Parties have now agreed on certain amendments regarding when the Earn Out Payment 1 shall be paid.

**2.   AGREEMENT AND AMENDMENTS**

2.1   The Parties agree that the amount of Earn Out Payment 1 is USD 250,661. Go North shall pay Earn Out Payment 1 in accordance with the following;

USD 50,132.20 shall be paid within 3 business days after the Agreement Date at the latest,

USD 50,132.20 shall be paid on 1st of April 2024 at the latest,

USD 75,198.30 shall be paid on 1st of July 2024 at the latest,

USD 75,198.30 shall be paid on 1st of October 2024 at the latest.

**3.   MISCELLANEOUS**

3.1   This Amendment Agreement forms an integrated part of the APA. The provisions of governing law and disputes in the APA shall apply mutatis mutandis to this Amendment Agreement.

**BUYER**                                                              **SELLER**

_____          _____
Johan Hallenby                                                  Ryan Hofacre

# Signature Certificate

Document name:
**Agreement reg. Caster Master.docx**

Unique document ID:
**dac3328e-d1a2-498c-97b8-66e084ecb8fb**

Document fingerprint:
508aadef40f280983fa33f70e36d7b978a519f48ce3a9ca3c604022612b0394efb35e1bca298d21e949545
4a3fb65f32a64e0e3501996595bc558cc02eba250c

## Signatories



### Johan Hallenby
CEO
**Go North Group AB (559252-2188)**

Email: johan.hallenby@gonorth.co
Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7
(desktop)
IP number: 78.71.132.111

Trusted timestamp:
2023-11-30 19:16:55 UTC



### Ryan Hofacre
Founder
**Products of Performance**

Email: productsofperformance@gmail.com
Device: Chrome 117.0.0.0 on Unknown macOS 10.15.7
(desktop)
IP number: 45.27.36.100

Trusted timestamp:
2023-12-01 03:20:41 UTC

This document was completed by all parties on:
**2023-12-01 03:20:41 UTC**



This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

# Audit log

| Trusted timestamp | Event with collected audit data |
| --- | --- |
| 2023-12-01 03:20:41 UTC | Document was signed by Ryan Hofacre (productsofperformance@gmail.com)<br>Device: Chrome 117.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 45.27.36.100 - IP Location: Greer, United States |
| 2023-12-01 03:19:42 UTC | Document was opened by Ryan Hofacre (productsofperformance@gmail.com)<br>Device: Chrome 117.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 45.27.36.100 - IP Location: Greer, United States |
| 2023-11-30 19:16:55 UTC | Document was signed by Johan Hallenby (johan.hallenby@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 78.71.132.111 - IP Location: Alingsås, Sweden |
| 2023-11-30 19:16:53 UTC | Document was reviewed by Johan Hallenby (johan.hallenby@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 78.71.132.111 - IP Location: Alingsås, Sweden |
| 2023-11-30 19:16:23 UTC | Document was opened by Johan Hallenby (johan.hallenby@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 78.71.132.111 - IP Location: Alingsås, Sweden |
| 2023-11-30 09:58:59 UTC | Document was sent to Roger Cohen (roger.cohen@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 98.128.213.122 - IP Location: Tyreso Strand, Sweden |
| 2023-11-30 09:58:57 UTC | Document was sent to Johan Hallenby (johan.hallenby@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 98.128.213.122 - IP Location: Tyreso Strand, Sweden |
| 2023-11-30 09:58:56 UTC | Document was sent to Ryan Hofacre (productsofperformance@gmail.com)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 98.128.213.122 - IP Location: Tyreso Strand, Sweden |
| 2023-11-30 09:58:53 UTC | Document was sealed by Wilhelm Bergman (wilhelm.bergman@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 98.128.213.122 - IP Location: Tyreso Strand, Sweden |
| 2023-11-30 09:57:14 UTC | Document was created by Wilhelm Bergman (wilhelm.bergman@gonorth.co)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 98.128.213.122 - IP Location: Tyreso Strand, Sweden |



EXHIBIT F



R E V I S I O N / L E G A L

8051 Moorsbridge Rd., Portage, MI 49024
**855.473.8474 / revisionlegal.com**

February 1, 2024

Go North Group AB
Sent via email only to:     Johan Hellenby: johan.hallenby@gonorth.co
                            Roger Cohen: roger.cohen@gonorth.co
                            Wilhelm Bergman: wilhelm.bergman@gonorth.co

RE:     Products of Performance LLC

All: I represent Products of Performance LLC. Please direct all correspondence related to this letter to my attention, or have your attorney do the same.

As you know, on October 30, 2022, Go North Group purchased substantially all the assets related to an Amazon business commonly known as Caster Master. A copy of the relevant Asset Purchase Agreement is enclosed for your reference. Pursuant to Section 4(b), Buyer was to pay Seller $250,661 as "Earn Out Payment 1," provided the Gross Revenue totaled at least $1,566,413 during the 12-month period following the Effective Date. Go North Group has admitted that Gross Revenue target was timely satisfied and that is owes Earn Out Payment 1.

However, Go North Group failed to complete this payment. Instead, Go North Group led my client to believe that it could pay the full amount, including roughly $50,000 within days of signing an amendment, provided the Earn Out Payment 1 amount was paid over the course of one year. To that end, the parties signed the Amendment Agreement, enclosed.

Go North Group knew, or should have known, that it was not able to live up to the terms of the Amendment Agreement as it breached the Agreement almost immediately. On November 30, 2023, my client provided notice of your default, which now remains past any relevant cure periods.

It is further my understanding that subsequent to your breach, you have been in discussions with my client. You have stated to my client that by February 9, 2024, Go North should be fully funded and be ready to pay the $250,661 owing in full. We appreciate that statement. But, we need more than just a statement at this point. As a result, we are willing to provide additional time for Go North to make payment in full.

But if payment is not received by February 16, 2024, my clients have instructed me to commence litigation consistent with the plan below. And this litigation will be aimed at not only collecting the money my client is owed, but to also claw back the assets.

My client possesses a valid security interest in the assets and that security interest has priority. Under Michigan's Uniform Commercial Code, a "security agreement" means "an agreement that creates or provides for a security interest." MCL 440.9102(ttt). In Michigan, the components for a security agreement "are minimal." *Roan v. Murray*, 219 Mich. App. 562, 565, 556 N.W.2d 893, 895 (1996). The APA is a security agreement and the security interest has attached to the collateral pursuant to MCL 440.9203.

And my client has priority because it has perfected its security interest. In Michigan, and regarding secured transactions under Article 9 of the UCC in general, to perfect a security interest, a financing statement must be filed in the location of the debtor. However, a Debtor's location applies "only if [the debtor] is located in a jurisdiction whose law generally requires information concerning the existence of a nonpossessory security interest to be made generally available in a filing, recording or registration system as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral." MCL 440.9307(3). If the local law of the debtor's location does not utilize a generally available filing, recording or registration system, "the debtor is located in the District of Columbia." *Id*.

Go North Group is located in Sweden. Sweden does not provide a centralized filing system. And our client has recorded a financing statement in the District of Columbia, enclosed. As a result, our client has a perfected security interest that enjoys priority. If a lawsuit is required, the path to foreclosing on the assets and obtaining possession of the same is clear.

This entire dispute can be resolved by Go North Group completing payment of $250,661 no later than February 16, 2024. Should you fail to complete that payment, we will move expeditiously to recover the assets.

Sincerely,
/s/ Eric Misterovich
Eric Misterovich